**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **CHARLES DENT,** | ) | |
| **No. N42308,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 15-cv-00740-NJR** |
| | ) | |
| **DR. RANDAL McBRIDE,** | ) | |
| **DR. DENNIS LARSON,** | ) | |
| **WEXFORD HEALTH SOURCES, INC., and** | ) | |
| **GLADYSE TAYLOR,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Charles Dent is an inmate in the custody of the Illinois Department of Corrections ("IDOC"), currently housed in Big Muddy River Correctional Center ("Big Muddy"). Pursuant to 42 U.S.C. § 1983, Plaintiff brings this action for deprivations of his constitutional rights with respect to the denial of timely and appropriate dental care. Supplemental state law claims are also asserted under 28 U.S.C. § 1367.

The complaint (Doc. 1) is now before the Court for preliminary review in accordance with 28 U.S.C. § 1915A. The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton,* 209 F.3d

1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## Summary of the Complaint

According to the complaint, on December 1, 2014, Plaintiff began experiencing throbbing pain in his lower left jaw. Plaintiff filed two sick call requests to see the dentist, and on December 23 he was seen by Dr. McBride, the prison dentist. X-rays were taken, but Dr. McBride announced that he was "stumped"—the exam was unremarkable, and there were no signs of infection. Penicillin and ibuprofen were prescribed.

Despite the medication, Plaintiff's pain persisted and his jaw became swollen, impacting his ability to eat and drink. On January 21, 2015, McBride agreed with Plaintiff that a referral to a specialist was warranted. McBride stated that he would submit the paperwork that same day. The prescriptions for antibiotics and ibuprofen were continued. Plaintiff submitted an emergency grievance to the warden, seeking immediate care, but the warden rejected the grievance, concluding there was no emergency. Plaintiff contends that decision was made without consulting medical personnel.

Plaintiff was examined by Dr. McBride again on January 26. McBride still could not identify any cause for Plaintiff's pain. He stated that he was still waiting for Wexford Health Sources, Inc., his employer and the prison's contract health care provider, to approve a referral to a specialist. Plaintiff learned later that McBride had not completed the referral paperwork on the

21st; instead, he did not submit the paperwork until the 26th, after being prompted by Health Care Administrator Debbie Isaacs. Dr. McBride wrote on the referral report to Wexford that Plaintiff had filed grievances and may be intending to file a lawsuit, so the issue needed to be resolved.

On February 9, Dr. McBride informed Plaintiff that a referral to see a specialist had been approved. But McBride, still relying upon the December x-rays, continued to say that there was no obvious problem. When the specialist, Dr. Swanson, saw Plaintiff on February 12, new x-rays revealed infection and three abscessed teeth, Nos. 17, 18 and 30. Dr. Swanson could not remove the teeth at that time because he had only been hired for a consultative exam, so Plaintiff was left in extreme pain. Swanson's report recommended that the three teeth be removed.

Plaintiff returned to the prison, only to become dizzy from high blood pressure—which he attributes to pain and infection. Big Muddy's Medical Director, Dr. Dennis Larson, and Health Care Administrator Isaacs both checked on Plaintiff. Dr. Larson had Plaintiff admitted to the infirmary and opined that stronger medication is what was needed: Tylenol-3 with codeine and an antibiotic different from that recommended by Dr. Swanson. Dr. Larson was going to confer with Dr. Swanson about whether surgery was necessary.

Dr. Larson's prescriptions ran out after three days, and Plaintiff's pursuit of adequate care continued. Dr. McBride questioned Plaintiff about what Dr. Swanson had concluded, and what Dr. Larson had said—actually already knowing that extraction of three teeth had been recommended. McBride explained that needed to consult with Dr. Larson about who was responsible for requesting the surgery. According to Plaintiff, it was clearly McBride's duty. That same day, February 17, the abscess at tooth No. 18 burst, causing Plaintiff to swallow puss. A nurse called Dr. Larson, and Plaintiff was released from the infirmary.

Letters to Dr. Larson and Dr. McBride seeking treatment went unanswered. After being without medication for eight or nine days, Plaintiff was finally seen by Dr. McBride on March 3. It took until March 19 for Plaintiff to be seen by Dr. Swanson for the extraction. And Dr. Swanson announced that the extraction of only two of the three teeth had been authorized, even though Dr. Swanson confirmed that the third tooth was equally worthy of extraction. It is not entirely clear whether McBride or Larson made the request for approval of the surgery and for how many teeth, but Wexford only approved the removal of Nos. 18 and 19. Plaintiff asserts that it was a cost-saving decision.

Plaintiff continued to experience pain and swelling, and the extended course of antibiotics had caused diarrhea and stomach cramps. On March 25, Dr. McBride said that the third tooth could not be extracted for two more weeks because Plaintiff had not fully healed from the first surgery. When Plaintiff's prescriptions ran out on April 8, he wrote to Dr. McBride, also reminding him that tooth No. 30 should be extracted in just one more week. In the interim, that tooth developed a boil. Plaintiff filed grievances and letters in an effort to secure treatment, with no result.

On May 4, after learning that Plaintiff had gone seven weeks without medication, Health Care Administrator Isaacs got involved, directing Dr. McBride to extract the tooth within two weeks, and promising to be present during the procedure. When the scheduled date for surgery arrived Isaacs was not at work, so the surgery was rescheduled for four days later. On May 21—almost six months after Plaintiff first experienced pain—tooth No. 30 was extracted by Dr. McBride, with Isaacs present.

Plaintiff's pain and swelling continued. He submitted three requests to see Dr. McBride, to no avail. On June 12, after a guard noted Plaintiff's condition, a nurse examined Plaintiff. The

nurse could give Plaintiff more ibuprofen for the pain, but was not authorized to give antibiotics, so Dr. Larson was called. On June 16, Dr. McBride saw Plaintiff and prescribed antibiotics. This lawsuit was filed July 8, 2015.

Plaintiff brings suit against Dr. McBride and Dr. Larson, alleging they were deliberately indifferent to his serious medical needs, and that they also were negligent. He further contends that Wexford Health Sources, Inc., and Acting Director of the IDOC Gladyse Taylor[1] had certain duties of care pursuant to their contract for prison health care. As evidence that the IDOC and Wexford were aware that inadequate care was being provided, Plaintiff cites an investigation that stemmed from a class action suit, exposing systemic deficiencies in management, staffing, training, policies, practices and procedures. Plaintiff specifically attempts to equate Wexford (and presumably the health care unit at Big Muddy) with a hospital, because Illinois recognizes a cause of action for institutional negligence. Director Taylor is alleged to have duties and "vicarious liability" under the contract for the alleged "institutional negligence." All four defendants are sued in their individual and official capacities. Compensatory and punitive damages are sought.

Based on the allegations in the complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Count 1:   Dr. Randal McBride was deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment.**

**Count 2:   Dr. Dennis Larson was deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment.**

---

[1] Taylor was named Acting Director effective June 16, 2015. *See* Illinois.gov/idoc/doc/aboutus/Pages/director.aspx (last accessed July 30, 2015).

**Count 3:  Dr. Randal McBride was negligent in treating Plaintiff's medical needs, in violation of Illinois law.**

**Count 4:   Dr. Dennis Larson was negligent in treating Plaintiff's medical needs, in violation of Illinois law.**

**Count 5:  The role of Wexford Health Sources, Inc., in providing medical care to Plaintiff amounted to "institutional negligence," in violation of its contract with the IDOC and Illinois law.**

**Count 6:  Acting Director of the IDOC Gladyse Taylor, in her official capacity,[2] was negligent in providing medical care to Plaintiff, in violation of the contract between the IDOC and Wexford Health Sources, Inc., and Illinois law.**

Any other claims intended by Plaintiff but not recognized by the Court should be considered dismissed without prejudice as inadequately pleaded. Plaintiff may move to amend the complaint to add any such claims. *See* FED.R.CIV.P. 15.

<u>Discussion</u>

*Counts 1 and 2*

The Eighth Amendment to the United States Constitution protects prisoners from being subjected to cruel and unusual punishment. U.S. CONST., amend. VIII. *See also Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). Prison officials can violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

A medical condition need not be life-threatening to be serious; rather, it can be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). Thus, at this early

---

[2] Although Taylor is purportedly sued in her individual and official capacities, it is clear that she is merely being sued as the personage of the IDOC. Therefore, only an official capacity claim has been recognized. *See Walker v. Rowe*, 791 F.2d 507, 508 (7th Cir. 1986) (distinguishing between individual and official capacity claims). Similarly, Wexford is a corporation and is only sued with respect to the actions, policies, and practices of its employees.

juncture, Plaintiff's dental ailments and the related pain appear sufficiently serious to implicate the Eighth Amendment. The complaint states colorable Eighth Amendment claims against Dr. McBride and Dr. Larson.

Proving deliberate indifference requires more than a showing of negligent or even grossly negligent behavior, the equivalent of criminal recklessness must ultimately be proved. *Farmer v. Brennan,* 511 U.S. 825, 835-37 (1994). With respect to medical professionals, erroneous treatment constituting a substantial departure from accepted medical judgment, practice, or standards may constitute deliberate indifference. *See Gayton,* 593 F.3d at 623; *Jones v. Simek*, 193 F.3d 485, 490 (7th Cir. 1999). Physicians are entitled to deference in treatment decisions "unless no minimally competent professional would have so responded under similar circumstances." *Sain v. Wood,* 512 F.3d 886, 894–95 (7th Cir. 2008); *see Duckworth v. Ahmad,* 532 F.3d 675, 682 (7th Cir. 2008). When a physician intentionally withholds efficacious treatment, however, the delay may amount to deliberate indifference if the delay results in serious harm or unnecessary pain. *See Berry,* 604 F.3d at 441. The allegations regarding McBride and Larson—the delay in treatment, concern about cost-savings, refusal to alter course when Plaintiff's condition worsened, applying for the removal of only two of three teeth, failing to provide medication as needed, and the like—could reasonably be characterized as deliberate indifference. *See*, e.g. *Perez v. Fenoglio*, __F.3d__, 2015 WL 4092294, *3-8 (7th Cir. July 7, 2015).

Finally, the Court notes that McBride and Larson were both sued in their individual *and* official capacities for monetary damages. The Eleventh Amendment bars suits against an unconsenting state—including its agencies and officers in their *official* capacities—for monetary damages. *See Edelman v. Jordan*, 415 U.S. 651, 662-663 (1974); *Indiana Protection and*

*Advocacy Services v. Indiana Family and Social Services Administration*, 603 F.3d 365, 370 (7th Cir. 2010). Consequently, the official capacity aspects of Counts 1 and 2 for monetary damages will be dismissed . No injunctive remedies are sought. Furthermore, no policies, such as placing cost-savings above care, are attributed to McBride and/or Larson—at least not to an extent to satisfy the *Twombly* pleading standard. Rather, the complaint only pleads individual capacity claims. Therefore, all official capacity claims against McBride and Larson will be dismissed; out of an abundance of caution, dismissal shall be without prejudice.

The Eighth Amendment claims in Counts 1 and 2 shall proceed against Dr. McBride and Dr. Larson.

### Counts 3 and 4

Counts 3 and 4 against Dr. McBride and Dr. Larson are based upon the same general allegations of inadequate care that underpin Counts 1 and 2, except that liability hinges upon the doctors' providing negligent medical/dental care to Plaintiff.

Under Illinois law, a plaintiff "[i]n any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice," must file an affidavit along with the complaint, declaring one of the following: (1) that the affiant has consulted and reviewed the facts of the case with a qualified health professional who has reviewed the claim and made a written report that the claim is reasonable and meritorious (and the written report must be attached to the affidavit); (2) that the affiant was unable to obtain such a consultation before the expiration of the statute of limitations, and affiant has not previously voluntarily dismissed an action based on the same claim (and in this case, the required written report shall be filed within 90 days after the filing of the complaint); or (3) that the plaintiff has made a request for records but the respondent has not

complied within 60 days of receipt of the request (and in this case the written report shall be filed within 90 days of receipt of the records). *See* 735 ILL. COMP. STAT. §5/2-622(a) (West 2013). A separate affidavit and report must be filed as to each defendant. *See* 735 ILL. COMP. STAT. §5/2-622(b).

Failure to file the required certificate is grounds for dismissal of the claim. *See* 735 ILL. COMP. STAT. § 5/2-622(g); *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000). Whether such dismissal should be with or without prejudice is up to the sound discretion of the court. *Sherrod*, 223 F.3d at 614. "Illinois courts have held that when a plaintiff fails to attach a certificate and report, then 'a sound exercise of discretion mandates that [the plaintiff] be at least afforded an opportunity to amend her complaint to comply with section 2-622 before her action is dismissed with prejudice.'" *Id.*; *see also Chapman v. Chandra*, 2007 WL 1655799 *4-5 (S.D. Ill. 2007).

Plaintiff has failed to file the necessary affidavits and reports certificates for the state law negligence/malpractice claims against Dr. McBride and Dr. Larson. There are no apparent pressing statute of limitations concerns, so Counts 3 and 4 will be dismissed without prejudice.

### Counts 5 and 6

Count 5 against Wexford Health Sources, Inc., and Count 6 against IDOC Acting Director Gladyse Taylor allege negligence. Plaintiff appears to mingle several theories. He characterizes Wexford as the equivalent of a hospital. Under Illinois law, a hospital has an independent duty—administrative or managerial in nature—to review and supervise the treatment of its patients. *Advincula v. United Blood Servs.*, 176 Ill. 2d 1, 28, 678 N.E.2d 1009, 1023 (Ill. 1996); *see also Williams v. Ericson*, 962 F.Supp.2d 1038, 1044 (N.D. Ill. 2013) (recognizing a colorable claim under this theory). The IDOC, by and through Acting Director Taylor, is said to be "vicariously liable," but similar to Wexford, liability supposedly stems from

the operation of the Big Muddy health care unit as a hospital. The complaint makes clear that the lynchpin of Counts 5 and 6 is the contract between Wexford and the IDOC for the staffing of prison medical personnel and the provision of medical care to prisoners. Thus, Plaintiff is necessarily claiming to be a third-party beneficiary of the contract (which remains to be seen).

In any event, the affidavit and report requirements in 735 ILL. COMP. STAT. §5/2-622 (discussed relative to Counts 3 and 4) are applicable to Counts 5 and 6. *See Williams v. Erickson*, 21 F. Supp. 3d 957, 959 (N.D. Ill. 2013) (applying Section 5/2-622 to a hospital); *see also* 735 ILL. COMP. STAT. §5/2-622(a) (applying the affidavit and report prerequisites to tort, contract and medical negligence actions). Because no affidavits and reports have been submitted, and with no pressing statute of limitations concerns, Counts 5 and 6 will be dismissed without prejudice.

The Court need not delve further into the viability of Counts 5 and 6.

### <u>Motion for Counsel</u>

Plaintiff moves for recruitment of counsel (Doc. 4). Plaintiff's Eighth Amendment allegations about his medical care, and his need to comply with 735 ILL. COMP. STAT. §5/2-622(a) in order to proceed with his state law claims beg the question, can Plaintiff proceed *pro se*? *See Childress v. Walker*, 787 F.3d 433 (7th Cir. 2015).

There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). Nevertheless, the district court has discretion under 28 U.S.C. § 1915(e)(1) to recruit counsel for an indigent litigant. *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866–67 (7th Cir. 2013).

When a *pro se* litigant submits a request for assistance of counsel, the Court must first consider whether the indigent plaintiff has made reasonable attempts to secure counsel on his

own. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (*en banc*)). If so, the Court must examine "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (quoting *Pruitt*, 503 F.3d at 655). "The question ... is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Pruitt*, 503 F.3d at 655. The Court also considers such factors as the plaintiff's "literacy, communication skills, education level, and litigation experience." *Id*.

Plaintiff has demonstrated that his attempts to secure counsel have been unsuccessful. His education consists of "some high school," and he asserts that he cannot litigate this case without assistance. He also takes BuSpar, a medication used to treat symptoms of anxiety. *See* http://www.drugs.com/buspar.html (last accessed July 30, 2015).

The nature of the medical issues in this case, with respect to the Eighth Amendment claims alone, as well Plaintiff's limited education and the difficulties in securing the medical evidence, convince the Court that the recruitment of counsel is warranted. Therefore, Plaintiff's motion (Doc. 4) will be granted, although a separate order will follow after the Court has made efforts to recruit an attorney.

## Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, the Eighth Amendment claim in **COUNT 1** shall **PROCEED** against Defendant **DR. RANDAL McBRIDE** in his individual capacity; the official capacity aspects of **COUNT 1** are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that the Eighth Amendment claim in **COUNT 2** shall **PROCEED** against Defendant **DR. DENNIS LARSON** in his individual capacity; the official capacity aspects of **COUNT 2** are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that the negligence claim in **COUNT 3** against Defendant **DR. RANDAL MCBRIDE**, and the negligence claim in **COUNT 4** against Defendant **DR. DENNIS LARSON** are **DISMISSED without prejudice** due to Plaintiff's failure to comply with 735 ILL. COMP. STAT. §5/2-622.

**IT IS FURTHER ORDERED** that **COUNT 5** against Defendant **WEXFORD HEALTH SOURCES, INC.** and **COUNT 6** against Defendant **GLADYSE TAYLOR** are **DISMISSED without prejudice** due to Plaintiff's failure to comply with 735 ILL. COMP. STAT. §5/2-622. Accordingly, Defendants **WEXFORD HEALTH SOURCES, INC.**, and **GLADYSE TAYLOR** are **DISMISSED without prejudice** as defendants to this action, as there are no other claims stated against them.

**IT IS FURTHER ORDERED** that Plaintiff's motion for counsel (Doc. 4) is **GRANTED**, in that the Court will attempt to recruit counsel to take on this case. A separate order will follow.

The Clerk of Court shall prepare for Defendants **DR. RANDAL MCBRIDE and DR. DENNIS LARSON**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. Consequently, Plaintiff's motion for service of process at government expense (Doc. 3) is **DENIED as moot**.

If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the

Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants **DR. RANDAL MCBRIDE and DR. DENNIS LARSON** are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Donald G. Wilkerson** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to a United States Magistrate for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* may have been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  August 3, 2015**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**