IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLES DENT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:15-cv-740-NJR-DGW |
| | ) |
| RANDAL MCBRIDE and | ) |
| DENNIS LARSON, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Now pending before the Court is the motion for summary judgment filed by Defendants Randal McBride and Dennis Larson (Doc. 36). For the reasons set forth below, the motion is granted.

## INTRODUCTION

Plaintiff Charles Dent, an inmate currently incarcerated at Big Muddy River Correctional Center, filed suit pursuant to 42 U.S.C. § 1983 alleging his Eighth Amendment rights were violated by Dr. Randal McBride, a dentist, and Dr. Dennis Larson, the medical director at Big Muddy (Doc. 1). Dent claims Defendants failed to adequately treat his jaw pain, an infection, and three abscessed teeth. He first complained about his condition on December 1, 2014, but it was not until May 21, 2015, that the three abscessed teeth were surgically removed. Even after removal of the teeth, Dent's pain and swelling continued.

Pursuant to an Order entered on August 3, 2015, screening the complaint in accordance with 28 U.S.C. § 1915A, Dent is proceeding on the following claims:

**Count 1:** Dr. Randal McBride was deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment.

**Count 2:** Dr. Dennis Larson was deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment.

(Doc. 8).

Defendants now seek summary judgment on Dent's claims (Docs. 36, 37). After the motion was fully briefed (Docs. 48, 49), Dent took the deposition of Dr. Jay Swanson, a non-party specialist who treated him. The parties filed supplemental briefs on July 6, 2017, and July 20, 2017, respectively (Docs. 56, 57).

## BACKGROUND

Defendant Dr. McBride first saw Dent on October 23, 2014, when he was scheduled for his biennial dental exam (Defendants' Statement of Undisputed Fact ("DSUF") ¶ 5). Dent complained that his lower right teeth hurt, and an examination showed moderate periodontitis (with no swelling) around teeth #30 and #31 (which are the teeth in the right lower jaw) (*Id.*). Dent was told to try sleeping on his left side to avoid tongue pressure on his teeth (Doc. 37-2, p. 1). Dent also was instructed to follow up if the problem continued (*Id.*).

On December 23, 2014, Dent reported a throbbing, excruciating pain in his lower left jaw that was preventing him from sleeping (Doc. 37-2, p. 1). Dr. McBride noted mild bone loss and moderate periodontal disease (DSUF ¶ 6; Doc. 37-2, p. 1). The medical

records stated that "no infection" was present (Doc. 37-2, p. 1); however, Dr. McBride testified that periodontal disease is in fact a bacterial infection (Doc. 37-1, p. 8). He ordered penicillin, ibuprofen, and an x–ray and told Dent to watch the area and make a request for additional care if the condition persisted (*Id.*).

Dent reappeared two weeks later on January 6, 2015, with pain that "hurts really bad," at the site where tooth #19 had previously been extracted (Doc. 37-2, p. 2). Dr. McBride saw no evidence of infection in the area of extraction; however, he reviewed the x-ray (noting nothing remarkable) and ordered another antibiotic, amoxicillin, and acetaminophen (Tylenol) (*Id.*).

On January 21, 2015, Dent appeared again with "undiminished" symptoms and reports of swelling in his left lower jaw (*Id.*). The medical notes indicate: "Discussed possible referral to M.D.S (Swanson, D.D.S., M.D.) for more extensive evaluation of this area than is possible at this facility. I/M agreed with this suggestion. Will submit appropriate paperwork" (*Id.*). Dr. McBride switched Dent's pain medication back to ibuprofen (*Id.*). On February 9, 2015, Dr. McBride was informed that the referral was approved, and Dent was seen by Dr. Swanson on February 12, 2015 (*Id.* at 3).

Dr. Swanson examined Dent's neck and head, ordered and reviewed a Panorex Radiograph, and talked to him about his complaint (which was lower, left jaw pain) (Doc. 56-1, p. 3). Dr. Swanson did not note significant swelling, bleeding, or pain at tooth #30; however, Dent exhibited "severe pain" upon percussion (tapping on a tooth) at teeth #17 and #18 (*Id.* at 3, 5, 8). He diagnosed Dent with "Periodontally involved dentition"—tooth decay and periodontal disease—conditions that may have been going

on for years but for which pain may come and go (*Id.* at 3, 5). Dr. Swanson noted that these conditions could lead to abscessed teeth and that tooth #18 had an "early abscess" (*Id.* at 3, 7). Dr. Swanson believed removal of teeth #17 and #18 on the left side was necessary and suggested removal of tooth #30 on the right side because removal would eliminate Dent's condition and associated pain (*Id.* at 4, 5). Dr. Swanson also directed Defendant Dr. Larson to initiate an Augmentin (antibiotic) regimen. If Dr. Swanson believed that a dental condition was emergent or life threatening, he would have called prison authorities to tell them that treatment should be started immediately (*Id.* at 7). Dr. Swanson made no such call with respect to Dent's treatment (*Id.* at 8).

A day after his appointment with Dr. Swanson, Dent was transferred to the infirmary by Dr. Larson because of "pain & soft tissue edema [on the left] mandible" (Doc. 37-1, p. 3). Dent reported dental pain and "mild facial swelling" was observed (Doc. 37-4, p. 6). Dr. McBride noted, however, that edema was not observed on Dent's prior visits in December, January, and early February 2015. On February 13, 2015, Dr. Larson initiated the Augmentin regimen (Doc. 37-2, p. 4).

By February 18, 2015, Dent reported that he felt better, he was eating, sleeping, and swallowing without complications, and he was discharged from the infirmary (Doc. 37-4, p. 14-16). On March 3, an additional Augmentin regimen was prescribed, along with ibuprofen. Dr. McBride noted that Dr. Swanson would perform the extractions once the procedures were approved by the prison (Doc. 37-1, p. 4). On March 19, 2015, the first available appointment (Doc. 37-4, p. 19), Dr. Swanson removed

teeth #17 and #18. Dr. Swanson did not receive approval from the prison to remove tooth #30 (Doc. 56-1, p. 6).

When Dr. McBride examined Dent one week later on March 25, 2015, the surgical sites were healing within normal limits (*Id*. at 5). Dr. Swanson testified that, after the extraction, pain would lessen by 72 hours post-op, that patients get back to normal in a week's time, and that the bony structure could take six months to heal (Doc. 56-1, p. 7). At this appointment, Dent told Dr. McBride he was experiencing pain at tooth #30 and again sought removal of that tooth (Doc. 37-1, p. 16). Dr. McBride testified that tooth #30 had some gum recession, which could cause sensitivity, but that there was nothing that looked extraordinary about #30. The filling looked good, there were no cracks, and there was no new decay. (*Id*.). Dr. McBride told Dent that he could not give a definite answer as to when tooth #30 could be extracted since the excision site of teeth #17 and #18 was still healing. (*Id*. at p. 17).

By May 4, 2015, Dent reported great pain at tooth #30, which prevented eating and sleeping and caused his neck to swell (Doc. 37-2, p. 6). Dr. McBride again explained to Dent that the surgical site would need to be healed prior to additional extractions (*Id*.). He also told Dent he was "on-line" for the extraction (*Id*.). Dr. McBride further explained to Dent that tooth #30 could be extracted at Big Muddy since it was a routine extraction (*Id*.). After initially refusing to have it done at Big Muddy, Dent agreed and presented for the extraction on May 18, 2015 (*Id*.). The procedure was delayed, however, because the Health Care Unit Administrator was not present. Dent indicated he had sufficient ibuprofen and no pain that day, and the matter was rescheduled for three

days later (*Id*. at 6-7). Tooth #30 was removed on May 21, 2015, without complications (*Id*. at 7). Dent returned on June 16, 2015, with pain and swelling at the operation site; however, Dr. McBride noted that the gum tissue "was closing very nicely for the time frame" and there was no evidence of swelling. As a precaution, however, he dispensed more penicillin and ibuprofen. The June 16, 2015 appointment was the last time Dr. McBride examined Dent.

## STANDARD

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. RULE OF CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *Lawrence v. Kenosha Cnty.*, 391 F.3d 837, 841 (7th Cir. 2004).

A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must

show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

## DISCUSSION

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, a plaintiff must show first that his condition was "objectively, sufficiently serious" and second that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-653 (7th Cir. 2005) (citations and quotation marks omitted).

The following circumstances could constitute a serious medical need: "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie Cnty.*, 394 F.3d 510, 512-513 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

Second, a prisoner must show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to

serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987). Put another way, a plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (citations omitted).

Here, there is no question that Dent suffered from an objectively serious medical condition, *i.e.*, the deterioration of his teeth and the resulting pain he experienced. *See Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) ("Tooth decay can constitute an objectively serious medical condition because of pain and the risk of infection."). Instead, Defendants argue that Dent has failed to show they acted with deliberate indifference, contending that Dent received timely and appropriate medical care.

According to Defendants, when Dent appeared for a routine examination and complained of right jaw pain on October 23, 2014, he was examined and told to try

sleeping on his left side to avoid tongue pressure on his teeth (Doc. 37-2, p. 1). He also was told to follow up if the problem persisted. Dent did not follow up with regard to this initial complaint.

When he complained of lower left jaw pain on December 23, 2014, he was examined, an x-ray was taken,[1] and conservative treatment was directed (antibiotics and pain medication), because Dr. McBride found only moderate periodontal disease and no abscess. Dent again was told to return if the pain persisted. When he did return on January 6, 2015, Dr. McBride directed a different antibiotic and pain medication. Again, Dr. McBride saw no swelling or x-ray results that would have warranted additional treatment.

On January 21, 2015, Dr. McBride, acknowledging he did not know what was causing Dent's symptoms, took steps to refer him to a specialist. When the referral was approved by the prison, Dent saw Dr. Swanson on February 12, 2015. Dr. Swanson noted tooth decay and early abscess, recommended that teeth #17 and #18 be extracted, and suggested that tooth #30 be extracted. The day after that consultation, Dr. Larson admitted Dent the infirmary and prescribed Augmentin, an antibiotic, per Dr. Swanson's orders. By February 18, 2015, Dent was feeling better and was discharged from the infirmary.

---

[1] Dent argues that the x-ray machine was outdated. There is no evidence, however, that it was malfunctioning or unfit for its purpose.

Teeth #17 and #18 ultimately were extracted by Dr. Swanson on March 19, 2015.[2] Tooth #30 was extracted on May 21, 2015. Defendants acknowledge there was a "slight delay" in certain aspects of Dent's care; however, they argue that neither Dr. Larson nor Dr. McBride were deliberately indifferent to Dent's medical needs.

In response, Dent argues there was an unreasonable amount of delay from the time he initially complained about pain in October 2014 to the final extraction in May 2015. Dent need not show that his complaints were literally ignored; rather, he must show that Defendants' responses to his complaints were "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate his condition." *Greeno*, 414 F.3d at 653 (quotation marks omitted). Delay in access to medical care can show deliberate indifference. *See Arnett v Webster*, 658 F.3d 742, 753 (7th Cir. 2011); *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008). "The length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010).

In this case, the length of delay does not amount to deliberate indifference. When Dent first complained of right jaw pain in October 2014, it was during a routine dental exam. He was told to try a different sleeping position, and his complaints regarding the right jaw pain stopped. When Dent began complaining of left jaw pain, he was treated with pain medication and antibiotics. There is no showing that this treatment decision

---

[2] As noted above, once the procedure was approved by the prison, a nurse made the appointment for March 19, 2015, Dr. Swanson's first available appointment.

was not based on medical judgment. *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). Furthermore, when he returned in early January 2015 and complained that the treatment was not working, different medication was prescribed (amoxicillin for penicillin and Tylenol for ibuprofen) and additional diagnostic tests were performed. At this point, Dr. McBride neither observed nor believed that additional care was warranted.

Dr. McBride did not simply persist in an ineffective course of treatment. *See Greeno*, 414 F.3d at 655 ("dogged persist[ence] in a course of treatment known to be ineffective can be an Eighth Amendment violation"). Instead, he changed medication and ordered more tests. Dr. McBride was not required to blindly and immediately prescribe the most potent pain medication available or immediately conduct surgery. A medical professional is only required to act in a manner that does not exhibit deliberate indifference. *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008) ("A medical professional is entitled to deference in treatment decisions unless 'no minimally competent professional would have so responded under those circumstances.'") (quoting *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 988 (7th Cir. 1998)).[3]

---

[3] In Dr. McBride's request for Dent to be referred to a specialist, Dr. McBride stated that he would "really appreciate having Dr. Swanson evaluate [the] situation . . . to determine if there is in fact something occurring that I can't detect" (Doc. 37-3, p. 1). He then states: "[Dent] has filed grievance and may be in the initiation of a lawsuit not absolutely clear at this time. This needs to be resolved now" (*Id.*). Dent argues, therefore, that Dr. McBride should have referred him to a specialist earlier and only considered a referral after Dent threatened to sue. (Doc. 56, p. 17). This evidence is unconvincing. While Dr. McBride may have been concerned about a potential lawsuit, it is clear, when considering the entire referral, that Dr. McBride sincerely believed additional care was warranted and there was nothing further he could do at the prison. Dr. McBride did exactly what is required of him—he referred a patient to a specialist when there was no further treatment he could perform.

When it became clear to Dr. McBride on January 21, 2015, that Dent required a specialist, he referred Dent to an oral surgeon, Dr. Swanson. Again, this is not a situation where Dent's condition was being ignored or where Dr. McBride persisted in an ineffective course of treatment. The fact that Dent may not have received immediate and complete pain relief or an instant resolution of his dental problems is not dispositive. *See e.g. Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("It would be nice if after appropriate medical attention pain would immediately cease, its purpose fulfilled; but life is not so accommodating. Those recovering from even the best treatment can experience pain. To say the Eighth Amendment requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd.").

Upon referral, Dent was seen by Dr. Swanson on February 12, 2015. Dr. Swanson did not direct any additional pain medication and did not indicate Dent's condition was an emergency that required immediate treatment. By February 18, 2015, Dent reported that he was feeling better, and he was scheduled for the next available appointment with Dr. Swanson for the first extractions. There is no evidence that any delay in ultimately extracting teeth #17 and #18 was unjustified.

As to the extraction of tooth #30, which Dr. Swanson suggested but did not recommend, there is again no showing of unreasonable delay. While Dr. Swanson believed that all three teeth could be extracted at one time, only two of the teeth were approved by the prison to be removed. And Dr. McBride elected to ensure that the surgery site for teeth #17 and #18 had healed (as the healing process could take up to six months) prior to directing additional surgery.

Mere disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish deliberate indifference. *Greeno,* 414 F.3d at 653. Here, there was no disagreement between Dr. McBride and Dr. Swanson about the urgency of removing tooth #30. *See e.g. Zaya v. Sood*, 836 F.3d 800, 802 (7th Cir. 2016) (finding that summary judgment may not be warranted when a treating physician disregards, as oppose to disagrees, with a specialist's recommendations). There was no recommendation that tooth #30 should be immediately extracted by Dr. Swanson and no evidence that Dr. McBride's decision was not based on medical judgment.

Finally, the parties group Dr. Larson and Dr. McBride together in making their arguments. Dr. Larson's treatment of Dent is limited to the time period in February 2015 when Dent was housed in the infirmary. During Dr. Larson's treatment of Dent, he was also under the care of a dentist and a specialist for his dental problems. There is no showing that Dr. Larson's treatment was deficient or that he provided care that was inconsistent with the directives of either Dr. Swanson or Dr. McBride. Dr. Larson approved Dr. McBride's referral to a specialist and otherwise approved the teeth extractions (Docs. 37-3, 37-7). As indicated above, no jury would find that there was intolerable delay in the treatment of Dent's dental needs.

## Conclusion

For the reasons set forth above, the motion for summary judgment filed by Defendants Randal McBride and Dennis Larson (Doc. 36) is **GRANTED**. The Clerk of

Court is **DIRECTED** to enter judgment in favor of Defendants and against Plaintiff and to close this case.

    **IT IS SO ORDERED.**

    DATED:  September 22, 2017

                                                          _____
                                                          **NANCY J. ROSENSTENGEL**
                                                          **United States District Judge**