IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLES DENT, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 3:15-CV-740-NJR-DGW |
| RANDAL MCBRIDE and DENNIS LARSON, | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on a Motion for Reconsideration filed by Plaintiff Charles Dent (Doc. 68), as well as his Motion to Appoint Counsel on Appeal (Doc. 70), Motion for Leave to Appeal *in forma pauperis* (Doc. 81), and Motion to Supplement the Record on Appeal (Doc. 83). For the reasons set forth below, the Motion for Reconsideration, Motion to Appoint Counsel on Appeal, and Motion to Supplement the Record on Appeal are denied. The Motion for Leave to Appeal *in forma pauperis* is granted.

## BACKGROUND

Plaintiff Charles Dent, an inmate in the Illinois Department of Corrections, initiated this lawsuit on July 8, 2015, alleging his constitutional rights were violated when Dr. Randal McBride, a dentist, and Dr. Dennis Larson, the medical director at Big Muddy Correctional Center, were deliberately indifferent to his serious dental issues, including painful, abscessed teeth (Doc. 1). Specifically, Dent claimed Defendants delayed the extraction of his teeth for an unreasonable amount of time.

Defendants filed a motion for summary judgment on the merits of this case on November 30, 2016 (Doc. 36). Dent filed a supplemental brief in opposition to summary judgment on July 6, 2017, after completing the deposition of Dr. Jay Swanson, an oral surgeon who treated Dent (Doc. 56). Defendants filed a supplemental reply on July 20, 2017 (Doc. 57). The undersigned District Judge granted summary judgment to Defendants on September 22, 2017 (Doc. 66). On October 3, 2017, Dent asked the Court to reconsider its ruling (Doc. 68).

## DISCUSSION

### I. Motion to Reconsider

Although Dent did not file his motion to reconsider pursuant to any certain Federal Rule of Civil Procedure, "the fact that it challenges the merits of the district court's decision means that it must fall under Rule 59(e) or Rule 60(b) . . . ." *Mares v. Busby*, 34 F.3d 533, 535 (7th Cir. 1994). Whether a motion for reconsideration should be analyzed under Rule 59(e) or Rule 60(b) depends on the substance of the motion, not on the timing or label affixed to it. *Obriecht v. Raemisch*, 517 F.3d 489, 493 (7th Cir. 2008). Because Dent's motion asserts a manifest error of fact by the Court in granting summary judgment, and because it was filed within 28 days of the entry of judgment, the Court reviews Dent's motion under Rule 59(e). *See id*.

As an initial matter, the Court must address its jurisdiction to decide Dent's Rule 59 motion. Normally, "a notice of appeal divests the district court of its control over those aspects of the case involved in the appeal." *May v. Sheahan*, 226 F.3d 876, 879 (7th Cir. 2000) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)). However, where a party prematurely files a notice of appeal before the Court has acted

on a timely Rule 59 motion, as is the case here, the notice of appeal does not divest the Court of jurisdiction to rule on the motion. *See* FED. R. APP. P. 4(a)(4)(B)(i). The notice of appeal is, in effect, suspended until the Court disposes of the Rule 59 motion. *See* FED. R. APP. P. 4(a)(4)(B)(i).

Having established its jurisdiction, the Court now addresses the merits of the motion. Rule 59(e) permits a court to amend a judgment only if the movant demonstrates a manifest error of law or fact or presents newly discovered evidence. *See, e.g., Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 814 (7th Cir. 2012). A "manifest error" is not demonstrated by the disappointment of the losing party, but rather is the "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). "This rule enables the court to correct its own errors and thus avoid unnecessary appellate procedures." *Miller*, 683 F.3d at 814 (internal citation and quotation marks omitted). The decision to grant or deny a Rule 59(e) motion is entrusted to the "sound judgment" of the district court. *Id.*

In granting summary judgment for Defendants, the Court held there was no unreasonable delay in the extraction of Dent's teeth. Specifically, the Court relied on evidence that Dent first complained of pain around the area of tooth #30 on October 23, 2014. An examination by Dr. McBride showed mild to moderate periodontitis (gum disease) but no abscess or swelling. Two months later, Dent returned and complained of pain on the other side of his mouth near teeth #17 and #18. Dr. McBride noted inflammation around the wisdom tooth and mild to moderate gum recession, but no infection at that time. Nevertheless, Dr. McBride ordered penicillin, ibuprofen, and an x–

ray and told Dent request additional care if the condition persisted. When Dent returned on January 21, 2015, again complaining of pain and swelling around the area of teeth #17 and #18, Dr. McBride performed a percussion test (tapping on the tooth), which was negative. Unsure of what was causing Dent's pain, Dr. McBride referred Dent to Dr. Swanson, the oral surgeon, for a more extensive evaluation than was possible at Big Muddy.

Dr. Swanson saw Dent on February 12, 2015. Dr. Swanson diagnosed Dent with tooth decay and periodontal disease and noted an "early abscess" in tooth #18 and possibly #17, as well as severe pain to percussion. Dr. Swanson indicated removal of teeth #17 and #18 was necessary. He also "suggested" removal of tooth #30. Dr. Swanson testified he would have made a phone call if he thought Dent needed emergency treatment or to get approval for tooth #30 if he thought it was urgent.

Upon his return to Big Muddy, Dr. Larson admitted Dent to the infirmary and prescribed him ibuprofen and antibiotics, which significantly improved Dent's symptoms and allowed him to eat, sleep, and swallow without complications. Teeth #17 and #18 were surgically extracted on March 19, 2015, Dr. Swanson's first available appointment. The Court found that the length of time from February 12, 2015, when Dr. Swanson diagnosed Dent with an "early abscess" to March 19, 2015, when teeth #17 and #18 were extracted was not unreasonable given that Dent's symptoms had improved and that he was scheduled for Dr. Swanson's first available appointment.[1] The Court

---

[1] Dr. McBride testified that Dr. Swanson is the only oral surgeon in the area who "deals with prison cases." (Doc. 37-1, p. 10).

also found there was no evidence that Dr. Larson's treatment was deficient or that he provided care inconsistent with the directives of either Dr. Swanson or Dr. McBride.

The Court also relied on evidence that Dr. McBride examined Dent post-operation on March 25, 2015. Dent again complained about sensitivity to tooth #30, which Dr. McBride noted had some gum recession but no cracks or new decay. Dr. McBride advised Dent they had to wait to extract tooth #30 until the surgical site from teeth #17 and #18 healed. On May 4, 2015, Dent reported greater pain in the area of tooth #30. Dent agreed to have the extraction done in two weeks after he had completed the current round of antibiotics. Tooth #30 was extracted on May 21, 2015. The Court held this length of time was not unreasonable when there was no recommendation from Dr. Swanson that #30 be extracted immediately and no evidence that Dr. McBride's decision to wait until the previous extraction site had healed was not based on medical judgment.

Dent now argues that the Court incorrectly relied on the testimony of Dr. Swanson. Dent claims Dr. Swanson changed Dent's diagnosis because he was upset he was not paid for his deposition. Dent claims his discovery of the "altered" diagnosis creates an issue of fact that precludes summary judgment. Specifically, Dent alleges that on February 12, 2015, Dr. Swanson's assistant informed Dent his x-rays showed he had several abscessed teeth and said "is they blind" in reference to Dr. McBride. Dr. Swanson then examined Dent and showed him the abscesses and infection on the x-ray. Dent claims Dr. Swanson wrote Dent had a "severe" abscess in teeth #17 and #18 and "severe perio + decay" in his medical records. Dent then refers to a motion to compel filed by appointed counsel (Doc. 35), which stated that Dr. Swanson had demanded payment for

his testimony in the amount of $1,700 per hour, with a prepayment of one hour's time. Because counsel was appointed to represent Dent *pro bono*, counsel did not agree to pay Dr. Swanson, a fact witness, any money (*Id.*). Upon learning he would not be paid, Dr. Swanson unilaterally cancelled the deposition and said he would not give testimony unless he was paid his demanded deposition fee (*Id.*). Plaintiff's counsel asked the Court to order Dr. Swanson to appear for his deposition and to deny Dr. Swanson's demand for fees (*Id.*). The Court granted the motion to compel and noted that neither Rule 30 of the Federal Rules of Civil Procedure nor 28 USC § 1821 provide for the type of fees Dr. Swanson demanded (Doc. 53). Dent now claims Dr. Swanson altered his diagnosis because he was upset he was not paid for his deposition, and that the Court relied on this testimony in granting summary judgment for Defendants.

Dent's argument regarding Dr. Swanson's altered diagnosis fails because Dent has misread Dr. Swanson's notes on medical record. Dr. Swanson's notes actually state: "17 + 18 – P.A. Abscess – severe pain to percussion." (Doc. 68, p. 9). It does not state that Dent's abscess was severe but rather that Dent had severe pain to percussion (tapping on his teeth) (*Id.*). Further, while the record does state "severe perio + decay," Dr. Swanson never downplayed the severity of Dent's periodontitis in his deposition by using the word "mild." Thus, the Court did not rely on any altered facts or testimony by Dr. Swanson in coming to its conclusion.

Dent next argues, briefly, that Dr. McBride was untruthful when he stated that Dent had only mild bone loss and moderate periodontal disease just to cover up his deliberate indifference. Dent questions how Dr. McBride could have failed to diagnose

an abscessed tooth when, a week later, Dr. Swanson found a severe abscess and severe periodontal disease. Dent claims this is "not medically possible" and is a "fiction" that the Court relied on. As previously discussed, however, the record does not indicate Dent had a severe abscess, only an "early" abscess. Furthermore, Dent has not pointed the Court to any existing or new evidence—other than his own say-so—indicating it is impossible for a doctor to miss an abscess or to consider a case of periodontitis to be "moderate," while another doctor later finds the periodontitis to be "severe." Because he has not shown any manifest error of law or fact, Dent is not entitled to relief on this basis.

Finally, Dent states, without any supporting argument, that his original complaint alleges he told Dr. Larson numerous times he was not receiving dental treatment and had been suffering since December 15, 2014. Dent claims Dr. Larson only prescribed three days' worth of Tylenol 3 when he admitted Dent to the infirmary and, when Dent's abscess turned into a boil and burst, Dr. Larson had to be called at home to prescribe Dent more pain medication. There was no discussion on summary judgment, however, nor is there any evidence in the record indicating Dr. Larson was aware of Dent's dental issues prior to seeing him in the infirmary on February 13, 2015, or that Dr. Larson failed to prescribe medication or treat him for an alleged burst abscess. "A Rule 59(e) motion cannot be used to present evidence that could and should have been presented prior to the entry of final judgment." *Matter of Prince*, 85 F.3d 314, 324 (7th Cir. 1996). Because these issues were not raised on summary judgment, Dent is not entitled to relief under Rule 59(e).

One other point is worth noting here. Dent cites to *Dobbey v. Mitchell-Lawshea*, a

case in which the Seventh Circuit held there was a genuine issue of material fact as to whether the defendants were deliberately indifferent in failing to treat the plaintiff's abscessed tooth. *Dobbey v. Mitchell-Lawshea*, 806 F.3d 938 (7th Cir. 2015). In *Dobbey*, the plaintiff complained of a loose tooth and severe pain to a medical technician who wrote "abscess" on a form. *Id.* at 939. The prison dentist learned of plaintiff's abscess five days later, and scheduled him to be examined two days after that. *Id.* The appointment was cancelled. *Id.* Still untreated "even by pain medication," the plaintiff experienced stomach pains, vomiting, and fever, and was taken to the infirmary. *Id.* The plaintiff finally was examined 21 days after the technician initially wrote "abscess" on his medical form, at which point the dentist prescribed penicillin. *Id.* at 939-40. The infected tooth was extracted six days later, after the antibiotic brought the infection under control. *Id.* at 940. In finding there was a genuine issue of material fact, the Court of Appeals noted that, in granting summary judgment for the defendants, the district court "failed to appreciate the gravity of a tooth abscess or attach sufficient weight to the slack response of prison staff to Dobbey's medical problem." *Id.* Because no reason had been given for the delay in examining the plaintiff, a jury could find that the defendant dentist was deliberately indifferent. *Id.*

This case is distinguishable from *Dobbey*. Dent's complaints of an infection were never disregarded; even without any evidence of an abscess, Dr. McBride ordered Dent penicillin and pain relievers. When Dr. McBride could not figure out the source of Dent's pain, he referred him to Dr. Swanson, who diagnosed Dent with an early abscess on February 12, 2015. The following day, Dr. Larson prescribed Dent an antibiotic and pain

medication, which significantly improved his condition. Dent remained on antibiotics, and the teeth were surgically extracted on March 19, 2015, Dr. Swanson's first available appointment. Thus, there was no unexplainable delay or complete lack of treatment. Thus, unlike *Dobbey*, is not a case where the jury could reasonably find Defendants were deliberately indifferent.

In conclusion, Dent has not demonstrated any grounds for relief under Rule 59(e), and the Court remains confident that it was correct in granting its summary judgment in favor of Defendants. Accordingly, Dent's Motion for Reconsideration (Doc. 68) is denied.

**B.    Motion for Leave to Appeal *in forma pauperis*, Motion for Appointment of Counsel on Appeal, Motion to Supplement the Record on Appeal**

The same day Dent filed his motion to reconsider, October 3, 2017, he also filed a notice of appeal (Doc. 69) and a motion for appointment of counsel on appeal (Doc. 70). On November 1, 2017, Dent filed a motion for leave to appeal *in forma pauperis* (Doc. 81) and a motion to supplement the record on appeal (Doc. 83).

Dent was permitted to proceed IFP in this Court on the underlying action (Doc. 6), and therefore, he may continue on appeal IFP without further authorization so long as his appeal is in good faith and his financial status has not changed. 28 U.S.C. § 1915(a)(1) & (3); FED. R. APP. P. 24(a)(3). While the Court remains convinced that summary judgment was appropriate, the Court has no reason to doubt that Dent's appeal is taken in good faith. Furthermore, Dent submitted a statement from his prison trust fund account indicating his financial status has not changed. Thus, Dent's motion to appeal *in forma pauperis* is granted.

The Court denies as moot, however, Dent's motion to supplement the record on appeal. In his motion, Dent asks this Court to modify the record on appeal to include all pre-trial motions, including Defendants' summary judgment motion, all briefs in support or opposition, and all exhibits, including the deposition of Dr. Jay Swanson. Dent also requests that the Court include his motion to compel the deposition of Dr. Jay Swanson and any other document relevant to the Court's summary judgment order. A review of the Record on Appeal confirms that these documents were indeed included in the record when prepared by the Clerk of Court. Thus, Dent's motion is moot.

Dent's motion to appoint counsel on appeal also must be denied. This Court does not have the authority to appoint counsel on appeal; only the Court of Appeals can make such appointments. *See* 7th Cir. CJA Plan.

## CONCLUSION

For the reasons stated above, the Motion for Reconsideration filed by Plaintiff Charles Dent (Doc. 68) is **DENIED**, the Motion to Supplement the Record on Appeal (Doc. 83) is **DENIED**, and the Motion to Appoint Counsel on Appeal (Doc. 70) is **DENIED**. The Clerk of Court is **DIRECTED** to transfer the Motion to Appoint Counsel (Doc. 70) to the Court of Appeals. Plaintiff's Motion for Leave to Appeal *in forma pauperis* (Doc. 81) is **GRANTED**. An Order assessing an initial partial filing fee will be entered separately.

**IT IS SO ORDERED.**

DATED: November 9, 2017

s/ Nancy J. Rosenstengel_____
**NANCY J. ROSENSTENGEL
United States District Judge**